```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
UNITED STATES OF AMERICA            :
                                    :
                                    :    S2 11 Cr. 873 (KBF)
            -v-                     :
                                    :    MEMORANDUM AND ORDER
ANTONY FAZIO, SR.,                  :
ANTHONY FAZIO, JR., and             :
JOHN FAZIO, JR.                     :
                                    :
                   Defendants.      :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 1 1 2012

KATHERINE B. FORREST, District Judge:

Anthony Fazio, Sr., his son, Anthony Fazio, Jr., and his nephew, John Fazio, have been indicted for conspiracy to engage in racketeering, various acts of racketeering, an extortion conspiracy, and acts in connection therewith. Anthony Fazio, Sr. and John Fazio also have been charged with money laundering, and Anthony Fazio, Sr. additionally has been charged with witness tampering. The original indictment has been twice superceded. (The operative indictment is referred to herein as "S2.") This matter is set for a multi-week trial commencing on April 23, 2012.

Anthony Fazio, Jr.--joined by Anthony Fazio, Sr. and John Fazio--and the Government each have moved in limine for pre-trial rulings with respect to various evidentiary and other issues. The Government has moved for orders: (1) allowing evidence as to the state of mind of various alleged victims of

1

the charged extortion and racketeering conspiracies, and in particular certain victims' belief that the Fazios were connected to organized crime; (2) precluding evidence that other employers not named in the S2 did not pay bribes to the Fazios; and (3) precluding evidence regarding any purported "good deeds" that the defendants might have performed. (Government's In Limine Mots. (Dkt. No. 77) ("Gov't MIL") at 1.)

Anthony Fazio, Jr. and John Fazio, joined by Anthony Fazio, Sr., have opposed each of the Government's motions and Anthony Fazio, Jr. has moved for orders precluding: (1) evidence of an alleged 2004 assault by Anthony Fazio, Jr.; (2) testimony that purports to connect him to organized crime; and (3) generally and at least as to him, certain telephone calls intercepted by wire tap, and relating to a company called Shoe Mania.[1]

This Memorandum and Order provides this Court's rulings as to several of the motions and guidance as to how certain evidence should be handled during the trial.

The Government's motions in limine are GRANTED, with the exception of the motion regarding specific good deeds; guidance is provided as to how such evidence may be handled. Anthony

---

[1] Defendants have also moved to preclude expert testimony from an individual named Ray Maria. At a pre-trial conference, however, the Government represented that it has decided not to call Mr. Maria. Accordingly, that motion is now moot.

In addition, defendants requested in their papers permission to be able to bring computers and other electronic devices into the courtroom for trial; this Court granted that motion orally and certain orders in conformance therewith have already been signed.

Fazio, Jr.'s motion to preclude evidence of the alleged 2004 assault is DENIED. This Court's ruling on defendants' motion regarding organized crime evidence is merged with its ruling with respect to the Government's motion regarding employers' state of mind (which similarly deals with testimony purporting to connect the Fazios to organized crime), as discussed below. Defendants' motion regarding the Shoe Mania calls is DENIED.

I.  BACKGROUND

The S2 alleges that each of the defendants held leadership positions in Local 348 of the United Food and Commercial Workers Union ("UFCWU"). (S2 ¶ 1.) Local 348 had over 12,000 employee members in the five boroughs of New York City alone. (Id. ¶ 2.) Anthony Fazio, Sr. was the President of Local 348 for more than two decades (id. ¶ 7); John Fazio was, from January 2010 until June 2011, the Secretary/Treasurer of Local 348 and prior to that, the Vice President of Local 348 for nearly a decade (id. ¶ 9); and Anthony Fazio, Jr. was the Secretary/Treasurer from September 2000 until January 2010, when he succeeded his father as President (id. ¶ 8). The S2 charges that the Fazios used their leadership positions in Local 348 to extort payments from employers.

Fourteen employers who paid such bribes are expected to testify for the Government at trial. The Government has represented that those employer-witnesses are expected to

testify that they paid the bribes out fear of economic harm that they and/or their businesses would suffer if they did not. (Gov't MIL at 2.)  They are further expected to testify that they were afraid of the labor unrest and other repercussions that could follow if they refused to pay the bribes, and that they thought that they might suffer physical harm (e.g., "getting shot," having their legs or bones "broken") if they did not pay the bribes.  (Id.)  A number of those witnesses would testify, if allowed to do so, that their fear was based on their belief that the Fazios were "Mafioso" or "mobsters."  (Id.)

In addition to the fourteen employers who are expected to testify at trial, there are also a significant number of employers who were part of Local 348 who will not be witnesses. (Gov't MIL at 8-9; see also Mem. of Law in Opp'n to Gov't's In Limine Mots. (Dkt. No. 85)("Jr. Opp'n") at 3.)

The Fazios also assert that they performed a number of good deeds including charitable work, that Anthony Fazio, Jr. arranged to have mammography trucks visit the factories organized by Local 348, he made flu shots available at Local 348 work sites, and he advocated on behalf of workers' rights. (Gov't MIL at 12; see also Jr. Opp'n at 5.)

4

II. DISCUSSION

    A. <u>Evidence Regarding Organized Crime</u>

Defendants have been charged with an extortion conspiracy pursuant to the Hobbs Act, 18 U.S.C. § 1951. An essential element of the crime of extortion is the victim's state of mind: the Government must prove beyond a reasonable doubt that the alleged victims experienced fear of what would happen if they did not comply with a defendant's alleged demands. <u>See</u> <u>United States v. Coppola</u>, 671 F.3d 220, 241-42 (2d Cir. 2012); <u>United States v. Mulder</u>, 273 F.3d 91, 104 (2d Cir. 2001); <u>United States v. Middlemiss</u>, 217 F.3d 112, 118 (2d Cir. 2000).

As set forth above, some of the fourteen employer witnesses are expected to testify that they feared economic and in some instances, physical, harm. (Gov't MIL at 2.) The Government represents that "if permitted, these witnesses will explain to the jury the bases of their fear. In particular, a number of witnesses will testify that they knew or suspected that the defendants were 'Mafioso' or 'mobsters.'" (<u>Id.</u>) A cell phone call intercepted by a duly authorized wire tap, captured an employer who had dialed John Fazio's cell phone but was waiting for him to pick up, stating, "Mafia . . . mafioso." (<u>Id.</u>) In another instance, a witness (Cohen)--not one of the employers who is expected to testify that he made illegal payments, but someone who allegedly had a number of discussions with John

5

Fazio regarding possibly having Local 348 represent his workers--relayed a conversation to John Fazio in which an attorney had described Local 348 as connected to the "M-O-B"-- i.e., spelling the word--and in which that lawyer asked Cohen why would he want to bring in a "mafia union." (Id. at 3.) Allegedly, John Fazio responded to this information by stating, "That's what he said?" (Id.) Two other witnesses are expected to testify that they suspected that the Fazios had ties to organized crime because they heard them brag about "beating," "shooting," or "assaulting" individuals in the past with whom they had disagreements. (Id.)

Defendants urge that this evidence is both irrelevant to the conduct charged in the S2 and that in any event, under Fed. R. Evid. 403 any probative value is outweighed by the prejudice defendants would suffer if the evidence were admitted. (See John Fazio's Mem. of Law In Opp'n to the Gov't's In Limine Mots. (Dkt. No. 86) ("JF Mem.") at 7.)

Anthony Fazio, Jr. also argues that as to him, this evidence would be particularly prejudicial because it cannot be connected to him individually. (Def. Anthony Fazio, Jr.'s In Limine Mots. ("Jr. Mem.") (Dkt. No. 78) at 1-3.) According to Anthony Fazio, Jr., it is inappropriate to paint him with the "same brush" that is used to paint his father and cousin. He adds that the fact that the S2 charges a conspiracy does not

6

answer the question because an individual can join a conspiracy with one object (to accept bribes from employers) but may not join a conspiracy with a different object (to extort money through threats of physical harm of financial ruin).  (Id.)

To determine whether evidence of defendants' (either individual or collective) alleged ties to organized crime should be allowed in at trial, this Court must determine both that it is relevant under Fed. R. Evid. 401 and that it is not unduly prejudicial under Fed. R. Evid. 403.  It is clear from the crime charged that the state of mind of alleged victims of extortion is directly at issue in this case.  See, e.g., Coppola, 671 F.3d at 241-42; Mulder, 273 F.3d at 103-04; Middlemiss, 217 F.3d at 117.  Thus, whether victims feared the Fazios because of some explicit or implicit understanding of their connection organized crime--real or not--is necessary for the Government to prove its case.  In other words, the truth of whether the Fazios were "mobbed up" is irrelevant; the question is whether the belief that the Fazios were "mobbed up" is relevant to an alleged victim's state of mind.  It is.

The Government contends that one way in which defendants instilled fear was through their reputation for, or connection with, organized crime.  In Coppola, the Court allowed such evidence finding

7

> where an organized crime enterprise cultivates a reputation for violence and intimidation in achieving its conspiratorial goals of control throughout an industry or area, a jury may reasonably consider that reputation in assessing whether payments were induced by the exploitation of existing fear without an explicit or implicit threat.

671 F.3d at 242.[2]

As stated above, the <u>truth</u> of whether the Fazios were connected to organized crime is not at issue. Rather, it would be enough that the Fazios had a reputation that they were. <u>See</u> <u>id.</u>; <u>United States v. Santos</u>, 449 F.3d 93, 101 (2d Cir. 2006).

Anthony Fazio, Jr. is incorrect that such evidence is somehow irrelevant as to him because he claims he is not directly linked to the statements, that they are stated only generally as "the Fazios". (<u>See</u> Jr. Mem. at 1-2.) The fact that he is charged with the same Hobbs Act conspiracy with which his father and cousin are charged renders this evidence equally relevant to him. He is, in fact, charged with being part of a conspiracy that extorted money--and an element of crime is the fear of non-compliance by the alleged victim. It may turn out at trial that there is insufficient evidence to sustain the extortion conspiracy charge against Anthony Fazio, Jr. At the

---

[2] John Fazio argues that <u>Coppola</u> is inapplicable here because in <u>Coppola</u>, the defendant had long-established ties to the Genovese Crime Family and that here, there is no "indication" that Local 348 or the defendants were controlled by the Genovese Family or any other family associated with organized crime. (JF Mem. at 4-5.) But the facts themselves do not take away the import of the principles enunciated by the Second Circuit in <u>Coppola</u>--namely that the victims' state of mind is relevant to charged extortion, and that "the Hobbs Act leaves open the cause of the fear." <u>Coppola</u>, 671 F.3d at 241.

8

appropriate time, as previewed at a recent hearing, his counsel may then make a motion pursuant to Rule 29 of the Federal Rules of the Criminal Procedure.

All defendants are therefore confronted with the fact that the basis for the state of mind of at least some of their alleged victims was that they were connected to organized crime. There is no doubt that such evidence is prejudicial--but that does not equate with being unduly prejudicial, for purposes of exclusion under Fed. R. Evid. 403.

All evidence which tends to prove guilt could be characterized as prejudicial, but is not necessarily so under the rules of evidence. See U.S. v. Quattrone, 441 F.3d 153, 186 (2d Cir. 2006). It is only unduly prejudicial evidence which should be excluded under Fed. R. Evid. 403. To constitute "unduly prejudicial," the prejudice that the defendants would suffer if the evidence is admitted must substantially outweigh its probative value. Fed. R. Evid. 403.

Here, the probative value of the proffered evidence regarding alleged belief as to connection with organized crime is strong: the fact that some of the alleged victims <u>believed</u> that the defendants were connected to organized crime would explain why they would be afraid of repercussions should they not comply with extortionate demands. That belief would, if

9

credited by the jury, explain their fear. It therefore has a high probative value.

It is certainly true that the terms "mafia," "mob," and "Mafioso"--or derivations thereof--are loaded terms. But that is precisely the point. As this Court understands the Government's evidence, certain of the alleged victims will themselves testify as to the alleged connection, using those loaded terms--and thusly, explain the basis for their fear. See Coppola, 671 F.3d at 242. To the extent that the usage is by other witnesses (e.g., Cohen), that is similarly relevant to the Fazios' general reputation. A widespread reputation for being part of, or connected to, organized crime is evidence of why a victim would be afraid. See id.

Accordingly, while statements connecting the Fazios to the mob are prejudicial, that prejudice does not outweigh the probative value of the evidence.

This Court will therefore allow this evidence in with the following guidance: (1) statements as to the belief of any alleged victims of extortion that any or all of the Fazio defendants were connected to organized crime will be allowed in (limiting instructions will be considered as appropriate); (2) the Cohen statement to John Fazio and to which John Fazio retorted, "That's what he said?" will also be allowed in, even though Cohen is not an alleged victim of extortion because he

10

was speaking directly to reputation of the Fazios generally in connection with Local 348;[3] (3) to the extent that any other evidence of any connection between the Fazios and organized crime would be presented through an witness (even if via wire tap) who is not the victim of extortion, or the Cohen statement above, the Government must make a proffer to the Court in advance of such presentation. Based on the Court's view as to how the evidence has developed at that time, the Court will make a specific ruling then.

B.  Specific Instances of Conduct

The Government anticipates that the defendants will want to present evidence that they did not take bribes from a number of employers. (Gov't MIL at 9.) It seeks a ruling that such evidence should be precluded as inappropriately trying to establish innocence through proof of the absence of criminal conduct on specific occasions. (Id. (citing United States v. Scarpa, 913 F.2d 993, 1011 (2d Cir. 1990).) Separately, the Government seeks a ruling precluding the Fazios from introducing

---

[3] Defendants argue that the Shoe Mania calls with Cohen are irrelevant and nothing more than speculation. (See, e.g., JF Mem. at 3-4.) As discussed above, the Fazios reputation in the community is probative of the alleged victims' state of mind. In addition, the Government contends that the Shoe Mania call between John Fazio and Cohen is admissible because John Fazio's response to Cohen's discussion of the Fazios' alleged mob ties is an "adoptive admission," under Fed. R. Evid. 801(d)(2)(B. (Gov't's Reply Mem. in Further Support of Its In Limine Mots. ("Gov't Reply Mem.") (Dkt. No. 93) at 8.) John Fazio counters that his response to Cohen was not one of adoption, but rather of shock. (Def. John Fazio's Reply Mem. of Law ("JF Reply Mem.") (Dkt. No. 96) at 4.) Resolution of that dispute, however, is one classically left within the hands of the jury.

11

evidence of "good deeds," as described above. (Gov't MIL at 12.)

The only defendant who has included a discussion of those two categories of evidence in his opposition to the Government's in limine motion is Anthony Fazio, Jr.; Anthony Fazio, Sr. has joined in the opposition by letter without discussion, and John Fazio has adopted Anthony Fazio, Jr.'s discussion without further argument on the same points (see JF Mem. at 1).

Anthony Fazio, Jr. urges that it is premature for this Court to broadly preclude the admissibility of all evidence relating to employers from whom one or more of the individual defendants may not have extorted money. Rather than proffering evidence that there would be numerous employers who would testify that they were not the victims of extortion, Anthony Fazio, Jr. suggests that he may want to cross-examine those witnesses called by the Government to demonstrate that while payments may have been extorted by someone, they were not extorted "by him." (See, e.g. Jr. Mem. at 3-5.) He argues that this would be in the nature of rebuttal evidence once the Government had put the issue into play.

Similarly, Anthony Fazio, Jr. argues that it is premature to rule that no acts of good deeds should be allowed in and that he may cross-examine the Government's witnesses who testify as to extortionate acts regarding specific instances of good

12

conduct by him regarding that employer or of which that employer is aware. (Id. at 5.)

This Court agrees that it is premature to preclude the type of limited cross-examination that Anthony Fazio, Jr. suggests. As the evidence develops, and this Court hears what the Government elicits on direct examination, whether or not such cross-examination is appropriate will become clearer.[4] In this regard, the Court will be guided by Rules 401, 404, and 405 of the Federal Rules of Evidence.

Rule 405 governs the manner in which character may be proved. As many courts have made clear, a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence. See United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978); United States v. Chan, No. S1197 Cr. 1053, 2002 WL 109528 (S.D.N.Y. Jan. 25, 2002).

However, once a party has elicited evidence on direct examination of reputation, the defendant may cross-examine on specific instances of conduct. Benedetto, 571 F.2d at 1250.

---

[4] The Government seeks to preclude cross-examination of the alleged employee-victims' knowledge of whether defendants--in particular, Anthony Fazio, Jr.--did not accept bribes from other employee-victims. (Gov't Reply Mem. at 12-13.) The Court understands Anthony Fazio, Jr.'s argument on this point to be a question about whether those employees paid bribes to Anthony Fazio, Jr.--not whether employers other than themselves paid bribes to Anthony Fazio, Jr. on that or other occasions. The Court finds such cross-examination would be appropriate.

13

C. <u>Evidence Regarding the Alleged Assault</u>

In 2004, Anthony Fazio, Jr. was apparently involved in an altercation with an individual from a competing union. The incident occurred in the parking lot of an employer whose employees were in the process of choosing a union. During the incident, Anthony Fazio, Jr. is alleged to have "slapped" (Jr. Mem. at 5) or "punched" (Gov't MIL at 3) a rival union organizer. In addition to that incident, the same union organizer saw a piece of paper on his own union's letterhead but that contained a variety of misinformation he had previously heard Anthony Fazio, Jr. making to the employees. (Gov't MIL at 4.) Shortly after the physical altercation, Anthony Fazio, Jr. is alleged to have tried to recruit the same individual he had "slapped" or "punched." (<u>Id.</u>) In the absence of an order precluding this testimony, the Government would have this union organizer testify live at trial.

Anthony Fazio, Jr. argues that the physical altercation is irrelevant to any issue in the case, is unduly prejudicial, and should also be precluded under Fed. R. Evid. 404(b) as evidence of uncharged crimes to prove an act in conformity therewith. (Jr. Mem. at 5.) Specifically, he argues that the assault is irrelevant because (1) Local 348 did not even win the store at which the altercation occurred--<u>i.e.</u>, "did not even organize this particular establishment"--and (2) there is no evidence

14

that the alleged victims were even aware of the assault, meaning that it could not have instilled the "fear" element of the crime of extortion. (Reply Mem. of Law in Support of Anthony Fazio, Jr.'s In Limine Mots. ("Jr. Reply Mem.") (Dkt. No. 95) at 2-3.)

The Government argues that the incident is directly relevant to the background of the conspiracy--it is "necessary to complete the story of the crime on trial." (Gov't MIL at 6.) "In particular, it shows how the Fazios were able to push out rival unions--a condition that must be met before an Employer and labor officials such as the Fazios could contemplate entering into any kind of collusive arrangements . . . ." (Id. (emphasis in original).) The Government adds that the altercation between Anthony Fazio, Jr. and the rival union will enable them to tell a coherent story to the jury regarding how the defendants were in fact able to deliver on their promise of labor peace that the payments from the alleged victim employers were intended to buy. (Id.) This Court agrees.

The extortion conspiracy charged makes the Fazios' ability to keep out rival unions a directly relevant issue in the case. The jury could consider the physical altercation between Anthony Fazio, Jr. and the rival union organizer to be an example of how this conspiracy was able to work, or why employers thought it might. Whether Local 348 actually was able to organize at the store is irrelevant to the scheme as alleged by the Government

15

that Local 348 was seeking to push out rival unions. The same can be said of the question of whether victims were aware of the altercation. At this time, that does not appear to be the purpose for which the Government seeks to offer evidence of the altercation.[5] The evidence is therefore relevant.

In terms of Rule 404(b), the Second Circuit takes an "inclusive approach" to prior act evidence that is offered for some purpose other than to prove an act in conformity therewith. United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009). Here, there is no argument that the physical altercation is being offered to prove that a different physical altercation in fact occurred. Instead, it would be presented as background evidence to show how the conspiracy was set up to work and why employers thought it might work. It would be offered to show that the Fazios could deliver on the particular promise made to employers of keeping rival unions out.

This Court is not, however, persuaded that the portion of the story regarding the information on the letterhead is admissible. The Court needs additional information regarding precisely how the letter would be offered and whether the witness intends to speculate as to any connection between the letter containing the purported misinformation and the Fazios.

---

[5] To the extent that the victims knew about the assault, whether that knowledge contributed to any "fear" is a question within the jury's purview.

16

Speculation as to such a connection would not be allowed. If there is a fact-based connection, that can be proffered. At this time, therefore, the Court will not allow testimony regarding the letter containing the alleged misinformation. The Government can renew its application to admit such evidence at the appropriate time if it so chooses.

D. The Shoe Mania Calls

Anthony Fazio, Jr. has moved to preclude admission of the intercepted calls from Cohen and others associated with Shoe Mania from being introduced as to him. (See Jr. Mem. at 7-9.) The Government does not intend to argue that Shoe Mania was one of the employers from whom the Fazios extorted payments. However, Shoe Mania had a number of communications with the Fazios regarding the possibility of having Local 348 represent its employees. (Gov't MIL at 15.) There are several calls relating to Shoe Mania in which Anthony Fazio, Jr. personally participated and which the Government contends demonstrate an attempt by the Fazios to enter into a collusive relationship with an employer. (Id.)

The calls relating to Shoe Mania follow a pattern similar to other alleged conspiratorial behavior and related acts. The calls are therefore relevant. A number of the calls allegedly concern the method by which the Fazios were attempting to keep a rival union at bay--i.e., by potential "dues splitting." (Id.

17

at 16.) Anthony Fazio, Jr. argues that "dues splitting" is not illegal and therefore these calls cannot be referring to illegal conduct and as such, they are irrelevant to the charged illegal conspiracy. (Jr. Mem. at 8 n.2.) According to the Government, the relevance of these calls does not depend on their legality or illegality; instead, they are evidence of a means to an end. (Gov't MIL at 15-16.) This Court agrees; the calls are evidence of pattern and show a means to an end--*i.e.*, pushing out a rival union.

Anthony Fazio, Jr.'s argument that these calls should be precluded as to him is also without merit. In its opposition to this motion, the Government proffers the ways in which the evidence will show that Anthony Fazio, Jr. was himself directly involved in these calls. If he wants to later argue to the jury that his participation did not rise to the level of conspiratorial behavior, that is a jury argument for a later time.

Accordingly, this Court will allow the Shoe Mania calls to come in and to come in as to Anthony Fazio, Jr.

## CONCLUSION

Motions *in limine* are, definitionally, a pre-trial attempt to determine what evidence should and should not come in at trial. It is necessarily an exercise performed without access to the level of detail regarding the nature of the story and the

18

strength or weakness of the proof that will be developed as the trial proceeds.

This Court has provided its current views based upon the representations of the parties as to the evidence likely to be offered and the connections between that evidence and legal theories. Should events transpire that alter these representations or theories, the Court will entertain a renewed application regarding one of these matters at that time.

The Clerk of the Court is directed to terminate the motions at Docket Nos. 77 & 78.

SO ORDERED:

Dated: New York, New York
 April 11, 2012

_____
Katherine B. Forrest
UNITED STATES DISTRICT JUDGE